Cabell, J.
The question in this case, depends on the construction and effect of the deed of May 1811, executed by Richard Bland Lee to Zaccheus Collins, conveying to Collins and his heirs the tract of land in Fair-fax, in trust for the uses therein declared. What interests and powers did the declaration of uses create ?
1. Mrs. Lee had an express estate for life for her separate use. 2. She had power, by writing under her hand, to direct the trustee to sell and convey the land or any part of it; the proceeds of sale to be subject to her sepa *204 rate use or order: a power which she might have exer ° cised the day after the execution of the deed, and in the lifetime of her husband. I understand that clause as giving to mrs. Lee absolute and uncontrolled dominion over the proceeds, to her separate use, unaffected by any of the subsequent limitations in the deed. 3. At the death of mrs. Lee, the land, if not previously sold by her direction, was to be held by the trustee, to and for the use of Richard Bland Lee during his life. Thus far there seems to be no room for doubt. The difficulty commences with the next clause, which prescribed the destination of the property after the death of Richard Bland Lee, in case he should survive his wife, and which declared, lastly, that “ after his death, it was to be held to and for the use of the devisees or heirs of the said Elizabeth Lee, to be divided and conveyed to them in such portions as the said Elizabeth Lee should by last will direct, or the law of the land in that case made and provided should determine.” This clause is most inartificially drawn; but it is manifest, that it was the intention of the grantor, not only to give mrs. Lee the power of appointing those who should succeed to the property after her death and that of her husband, but further, to prescribe the persons to whom it should go, in case she should fail to make such appointment. Such a provision, in case of mrs. Lee's failure to appoint, was absolutely necessary to the disposition of the inheritance; for without such provision, there having been nothing but life estates granted by the deed, the fee or inheritance would have resulted to the grantor. Both of these objects, the power of appointment by the wife, and the destination of the inheritance in case she should fail to make an appointment, might have been directed so as to leave no doubt on the subject, if the draughtsman of the deed had used two separate simple clauses for expressing the intention of the grantor. But he resorted to the use of one compound clause, and thus *205 “ labouring to be concise, he became obscure.” Obscurities of this sort, however, may often be removed by reducing the sentence to its original elements; by dividing the compound sentence into the simple parts of which it is composed, and throwing into each part that which properly belongs to it. Let us try this process. The estate is to go to mrs. Lee's devisees or heirs: the devisees of mrs. Lee are the persons whom she prescribes to be such by her will; her heirs are the persons prescribed by the law to take her estate in case she makes no will. Her devisees, or her heirs, are to take the estate in such portions as mrs. Lee shall direct, or as the law shall prescribe : that is, her devisees are to take in such portions as mrs. Lee may direct by her will; or, in case there be no will, and consequently no devisees, then her heirs are to take in such portions as the law shall determine. It would be preposterous to say that the heirs of mrs. Lee should take as heirs, in such portions as she should direct by her will; for if they take under her will, and in portions directed by her, they are devisees or appointees, and not heirs. If we reduce this sentence to its component parts, assigning to each what properly belongs to it, all difficulty will vanish; for then it will run thus: after the death of Richard Bland Lee, to and for the use of the devisees of mrs. Lee, to be divided and conveyed to them in such portions as she shall by her last will direct: or in case she shall fail to give such direction by her will, then the property is to go to her heirs, in such portions as the laws of the land may determine. If the deed had been in that form (as I conceive it is in substance) then it would be clear, that there would have been an express estate to mrs. Lee for her life, remainder to her husband for life, remainder to such persons as she should appoint by her will, remainder, in default of such appointment, to the right heirs of mrs. Lee. And, in that case, the remainder limited to the heirs of mrs. Lee, *206 would, under the operation of the rule in Shelley’s case, have vested in her; so that she would have the whole estate, subject only to her husband’s life estate, with an express power to convey the estate by her will.
Having thus ascertained the meaning of the limitations of this deed, ’let us now proceed to the main question in the cause, whether the express power to devise the estate, took from mrs. Lee the power to convey it by deed in her lifetime ? I am of opinion that her power is not thus restricted.
, We rpust bear in mind, that real and not personal property is the subject in controversy; for the law, as it relates to the power of the wife over her separate estate, is different, in many respects, when applied to real, from what it is when applied to personal estate; as I shall hereafter have occasion to shew.
By the common law, it is a fundamental principle, that the sole deeds of a feme covert are void. Perk. § 6. 2 Roper on Prop. 98. It follows, therefore, that she cannot, without the concurrence of her husband, part with or encumber her own freehold estate. And this principle is, from the policy on which it is founded, applicable to the wife’s separate estate, settled or limited by deed or otherwise to her separate use, The jus disponendi, however, is incident to the idea of property; and, therefore, when real estate is limited to the separate use of the wife, although she cannot dispose of it by her own sole act, yet she may part with it by fine or recovery in England, or by deed in this country, her husband joining with her in the deed, and she being privily examined according to our statute, even although nothing be said in the deed creating the separate estate, as to the power of the wife to dispose of it. And it is to these modes of conveyance, where her husband joins with her, and to these only, that the remarks of the judges are applicable, when they say, that the wife may dispose of her separate real estate, in cases *207 where the deed creating it is silent as to the power of disposing of it. For it has been solemnly decided, that the wife cannot, in such cases, dispose of it by will. West v. West's ex'ors, 3 Rand. 373. But it is competent to the grantor of real estate in trust for the separate use of a feme covert, to give her power to dispose of it by either deed or will; and then she may dispose of it, accordingly, by her own sole act. It is competent to him, also, to restrain the power of alienation, by confining it to some particular mode, or by interdicting it entirely. And I am of opinion that this may be done either expressly, or by necessary implication. For, cujus estdare, ejus est disponere. But, as I before observed, the law is different, in some respects, as to the power of the wife over her separate personal estate. Thus, it is unquestionable, that the mere grant of separate personal property, without any thing being said as to the power of alienation, gives her such absolute dominion over it, that she may dispose of it by her own sole act, in any manner that she pleases, as if she were a feme sole. It is not necessary, in this case, to inquire into the reason of this difference; and I mention it, merely because I may hereafter have occasion to refer to it by way of illustration. With these general principles in view, let us proceed to the main question in this case, whether the power expressly given to tnrs. Lee to convey the estate by will, necessarily precludes her from conveying it in any other way ?
It is true, that if the power given to the wife was a mere power, unconnected wfith any interest in the estate which she was empowered to convey, the power could be exercised only in the mode prescribed. But here, the wife was entitled to the whole estate, subject only to the life estate of her husband in case he should survive her; and we have seen, that she might convey her interest in the estate, by fine and recovery in England, or by deed properly executed under our statute, *208 even if no power to convey had been expressly given by the deed creating her separate estate. She could not, however, in such case, dispose of the estate by her will; West v. West's ex'ors, before cited. But, in the case before us, she is expressly authorized by the deed creating the estate, to dispose of it by her will. Now, I cannot perceive the force of the argument, which infers diminution of power from its extension. I cannot perceive how the express grant of a power, which the wife without such grant had not, can be made to take from her a power which she had, without the grant, and independent of the grant.
But it was contended, that the grant of a power to convey in one mode, indicates an intention to prohibit all other modes of alienation ; on the principle that ex-pressio unius est exclusio alterius. This is the great argument relied upon, in cases of separate pérsonal property; and there may be some plausibility in it, when applied to such property. We have seen, that where personal property is the subject, the mere grant of a separate estate, nothing being said as to the power of disposition, gives to the wife the power of alienation in any mode she may please, as if she were a feme sole. It might, therefore, be said with some appearance of reason, that the express grant of a power which' the wife would have had without the express grant, indicates an intention to confine her to that power; since the express grant would otherwise be supererogatory. How far this argument may be conclusive in cases of personal property, it is not necessary to decide in this case; for this is a case of real estate. I will observe, however, that there has been some conflict of opinion, among the judges of the english courts, upon the force of this argument when applied to personal property ; and I am decidedly of opinion, that the weight of authority is against the argument. But be that as it may— and admitting that exfressio unius est exclusio alterius, *209 when personal estate is the subject, I think that the argument founded on it, when applied to real estate, fails to prove that which it is adduced to prove. Let it be remembered, that a feme covert is under a legal disability to convey, by her own sole act, in any form, her separate real estate, in cases where the instrument giving her the estate is silent as to the power of alienation. The express grant of a power to convey the estate, in one particular form, is therefore nothing more than a dispensation from one species of disability; and if there is any force in the argument founded on the maxim ex-pressio unius est exclusio altcrius, its sole tendency is to exclude the dispensation from all other disabilities; and, therefore, to leave all other disabilities in full operation. But the implied or even express permission of existing legal disabilities to remain in force, is no proof of intention to lake away existing legal rights; one of which, in the case of a married woman, is the right to convey her separate real estate, with the concurrence of her husband.
There is, moreover, internal evidence in the deed before us, that in giving mrs. Lee power to dispose of the estate by will, it was not the intention of the grantor to exclude the power to convey by deed: for, in the very first clause of the deed declaring the trusts, power is expressly given to mrs. Lee to direct the trustee to sell the estate; and in case of a sale, the trustee is to hold the proceeds subject to her separate use and order. This circumstance has another most important bearing. It deprives this case of the force of the argument most commonly used in similar cases; namely, that the express power to dispose by will, shews an intention in the grantor to continue the estate in the wife during her whole life, and thus to guard her against the improvident conveyances which she might be induced to make through the solicitations or improper influence of her husband. For here, the wife not only has the power to *210 dispose of the estate by her will, but she has the express power to sell it at any time during the coverture. This view of the subject, in my humble judgment, is absolutely conclusive of the case.
So much on the ground of principle. How stand the authorities ? I have carefully examined a vast number, I may say almost all, of the english decisions; and I have not found one, in which it has been held that the mere grant of power to appoint by will, takes from the wife the power to convey her separate real estate by fine and recovery. The only case which even looks that way, is the case of Parkes v. White, 11 Ves. 209. That was the case of an antenuptial settlement, making (among other things) provision for the children of the marriage. The property was conveyed to a trustee, to permit the wife to receive the rents and profits, during her life, to her sole and separate use; and from and after her decease, in trust for such person or persons as the wife should by her last will in writing limit and appoint ; and in default of such appointment, then to the use of the children of the marriage; and in default of issue, then to the use of the right heirs of the wife. The husband and wife sold the estate by fine. Lord Eldon confirmed the sale as to the life estate of the wife, and also as to her ultimate remainder in fee; but set it aside as to the remainder to such persons and uses as the wife should appoint by will, and also as to the children who were to take in default of appointment. He said, that the wife being authorized to appoint by will, shewed an intention in the grantor, that the trustee should so hold the estate as to enable the wife to appoint at any time during her life. But it is to be observed, that the power to appoint by will was not the only ground of the decision. The children of the wife were regarded as purchasers ; and they were to take as such, in default of appointment by will. Well, therefore, might it be said in that case, that the grantor, having *211 regard to the interests of the children, did not mean that those interests should be defeated by any other means than those prescribed in the deed. This case, therefore, is no authority for one, in which there is nothing from which to infer intention, except the power to the wife to dispose of her own estate by will.
But it was contended by the counsel for the appellants, that if all other grounds fail, this case must be ruled by that of Williamson v. Beckham, 8 Leigh 20, They say, that case is identical with this, and that it was decided against the power of the wife to convey by deed, on the sole ground that it was expressly provided by the deed of settlement, that the wife might appoint by will. I have most carefully examined that case, and I have come to a very different conclusion; that it is materially different from this, and that, consequently, it ought not to influence our present decision. That was an antenuptial settlement, conveying both real and personal estate; but the controversy related to real estate only. The deed of settlement conveyed the property to Gallaher, in trust to permit the wife to receive and enjoy all the interest and profits of the real estate, and the free and absolute disposal of the personalty, as fully and as freely as if the wife were a feme sole; and then came these clauses: “And should the said Ann A. R. Stevenson” (the intended wife) “ survive the said Fonlain BecMam” (the intended husband) “ the said property hereby conveyed shall be at her full and absolute disposal. And the said Ann A. R. Stevenson shall, at all times after her intermarriage with the sa,id Fontain, have the power, by a written instrument under her hand and seal, and attested by three or more witnesses, in the nature of an appointment of a will and testament, to dispose of the said property, real and personal, to whomsoever she may please, as fully as if she were a feme sole; and in default of such appointment, all the said property shall descend to her lawful heirs or repre *212 sentatives.” The husband and wife, shortly after the marriage, joined in a deed duly executed according to 0ur statute, conveying the land to Williamson. And the question was, whether Beckham and wife had power to convey the land by deed‘d This court decided that they had no such power. Let us examine the terms of these limitations, for the purpose of ascertaining with precision, not only the powers given to the wife, but the times when it was intended they should be exercised. These powers, so far as they relate to the real estate, are to be found in the two'clauses I have quoted. The first of those clauses gives to the wife a contingent interest in fee, depending on the contingency of her surviving her husband; and it declares, that should she survive him, the property shall be at her full and absolute disposal. This clause gives to the wife the absolute and unlimited power of alienation, to he exercised, however, after the death of the husband. The next clause, immediately following and in juxtaposition with the first, gives the wife a special power; the power to appoint by will. This special power was intended to be exercised by the wife during the life of the husband; for, although the words are in themselves general, that she should have the power to appoint by will, “ at all times after her intermarriage,” yet it is manifest, that the grantor meant all times after the marriage and 'before the death of the husband; for he had, in the sentence immediately preceding, already given her absolute and unlimited dominion over the property after the death of the husband. Here, then, was a grantor giving powers to be exercised and enjoyed at different times and under different circumstances ; the first, to be exercised after the death of the husband, and of course after the termination of the coverture; the second, to be exercised during the life of the husband and during the existence of the coverture. And these powers are given in clauses in juxtaposition, and, as I may say, in the same breath. *213 The first clause gives general and unlimited power; the second gives a special power to appoint by will, Could there be a doubt, under such circumstances, that the grantor intended to grant, by the second clause, nothing more than the power specially given ? If he had intended that the grantee should have general powers, would he not have said so? as he had already done in the first clause, where it was clearly his intention to give general powers. This marked change of phraseology, shewed most manifestly a difference of intention. It shewed as clearly to my mind, that, in the second clause, he intended to exclude all other modes of alienation, as if he had used express terms of positive exclusion. Well, therefore, might the court say, in Williamson v. Beckham, that quoad that case, expressio unius est exclusio alterius. In this respect, that case differs essentially from this; for here, although there is a power given to dispose by will, yet there is also an express power given to dispose by deed. That case was well decided, on this ground ; but has no application to this.
There is also another marked difference in the case of Williamson v. Beckham. There, the wife had a contingent iuterest depending on the event of her surviving her husband. And it has been decided in England by sir W. Grant, in two cases (Richards v. Chambers, 10 Ves. 587. and Lee v. Muggeridge, 1 Ves. & Beam. 118.) that the wife has no power, during coverture, to part in any way with such an interest, unless she has stipulated for power to do so. Both of these cases were referred to in Williamson v. Beckham: and if that was the ground of decision in that case, it is not for me, now, to inquire into its propriety or impropriety. It is sufficient to say, that no such circumstance exists in this case. That decision, therefore, whether right or wrong, has nothing to do with the case before us.
I am of opinion, that the decree should be affirmed.
Bb.qckenbb.ough, J. concurred.
*214 Tucker, P.
According to my view of this case, it ^es within a narrow compass, depending very much upon the construction of the residuary clause of the deed of May 1811, and steering clear of the doubtful question which has been so much argued, and which is supposed by the counsel for the appellants to have been settled by the case of Williamson v. Beckham, 8 Leigh 20. Let us see, then, what is the true construction of the deed.
The legal title having passed by the deed to Zaccheus Collins, the trustee, all the limitations of the instrument must of necessity be trust estates. And if, as has been contended, the limitation over to the use of the devisees or heirs of the wife, is not a designation of the persons to take as purchasers, there can be no doubt, that that limitation enured to vest in her the remainder in fee. For both the life estate and remainder being of the same character, the rule in Shelley's case applies, and vests the remainder in the ancestor, instead of the heirs as purchasers. Nor would it be an objection to this construction, that this is the case of a trust; for trust estates are as much within the influence of the rule as legal estates, although in the case of articles, and of ex-ecutory trusts, the court always moulds them according to the intention, without reference to the rule. The case of Bagshaw v. Spencer, 2 Atk. 583. in which lord Hardwicke denied, or was supposed to have denied, the distinction between executed and executory trusts, was, as to that matter, soon contradicted, and has long since been overruled. Wright v. Pearson, Amb. 358. Jones v. Morgan, 1 Bro. C. C. 206. Butl. Fearne 114.132, 3. I shall not therefore, in my construction of this instrument, rely upon the nature of the interest being equitable instead of legal. But I think it plain, that the words “ to the use of the devisees or heirs of the wife,” are to be taken as words of purchase, and not as words of limitation. They do not, indeed, as was contended *215 by mr. Cooke, necessarily designate tbe children as purchasers, for if she should have no children, her collateral heirs would still take under the designation of heirs. But neither her children nor her collateral heirs could ever take by inheritance, since, by the express provisions of the deed, they are to take in such portions as she should direct. If, then, she were to make a will, directing that A. should take a double portion and B. should take a half portion, they must take accordingly; and, in that event, they obviously could not take as heirs, but could only take as beneficiaries under the deed, that is, as purchasers. It is true, that in default of the direction, the estate is to be divided and conveyed “ as the law of the land in that case made and provided shall determinebut that is nothing more than to adopt the principle of equity, that where no appointment or direction is made under a power, equality shall be the rule. To say tbe least, here is a contingent limitation to those who at her death may be her heirs ; and she therefore has but a life estate in the property. The case, then, comes within the conceded principle, that where there is a contingent limitation over, the wife cannot by her conveyance affect or destroy it.
My brother Cabell thinks, that the limitation in default of appointment, is to heirs as such, and not as purchasers. 1 cannot think so. It is quite clear, that if there be an appointment of the portions which they are to take, they must take as purchasers. Was it designed that they should in one clause be considered as purchasers, and not so in the next? The word is used but once, and it ■is clearly there used as a word of purchase ; can it have another and opposite signification in the dependent clause ? Can it mean both ? I think not, because, in either event, the estate is to be divided and conveyed to them by the trustee. Admit that the words were, that the estate was limited over to the heirs, to be divided and conveyed to them in such portions as the law shall deter *216 mine, still they must take as purchasers; for the estate is to be conveyed to them, and divided among them before it is conveyed ; all which is inconsistent with the notion °f inheritance in parcenary. I adhere, therefore, to the opinion, that the words, “ as the law of the land in that case made and provided shall determine,” mean that, in default of apportionment by mrs. Lee, the property shall be divided and conveyed to the heirs, in such portions, as, in defect of apportionment among a class who are to take, the rules of law appoint and determine.
From this view of the case, it is obvious, that it is not within the principle of the decision in Williamson v. Beckham. There is, indeed, an implied power of appointment by will, contained in the limitation to the devisees of the wife. The clause, if carried out, would run thus—“to the use of such person or persons as she shall by will direct and appoint, and in default of such appointment, to the use of her heirs in such portions as she shall by will direct and appoint, and in default of such appointment, then in such portions as the law of the land in that case made and provided shall determine.” In default, however, of the exercise of this power of appointment to devisees, there is, as I conceive, a limitation to her heirs as purchasers, since it is obvious, they are not necessarily to take in the proportions which would devolve on them by inheritance. This limitation excludes the idea of that absolute property in the fee, which was the basis of the very powerful argument of mr. Stanard. If the heirs are to take as purchasers, though their interest is contingent, yet it cannot be passed or defeated by her conveyance.
In this view of the case, it seems unnecessary to reconsider Williamson v. Beckham: yet to avoid misconception, I shall state, succinctly, the principles in regard to this matter, which I consider as governing it. 1. Where a settlement of property, real or personal, is made upon a feme covert, whether before or after mar *217 riagc, by which property is conveyed to her separate use, she has the absolute right to dispose of it, unless her power of disposition is controlled by the settlement; provided, in the case of realty, the husband joins in the deed. 2. Where her power of disposition is so controlled, the restriction is valid and binding, and does not fall within the principle which declares, that conditions or provisions repugnant to the nature of the estate granted are void. This seems to be a concessum; for all the cases admit that the power of the wife may be controlled by negative words. This being so, it is clear, 3. that the whole question is a question of construction. Where a trust estate in fee is given to the wife, with power to dispose of it by will, but in no other manner, it seems to be conceded that, with these express words of restriction, she has no power to alien, except in the manner prescribed. But it is denied, that a power to dispose by will, without negative words superadded, is to be construed as restricting her to that mode of disposition. Upon this point, opinions have been divided ; and this court, in Williamson v. Beckham, regarding itself as tied down by no settled rule, decided, that the prescribing one mode of disposition, in a marriage settlement, was to be construed as a negative of all others: that the object of marriage settlements is not to increase the power of the wife, so much as to place her beyond the power or influence of her husband, and to protect her, not only against his marital rights and his imprudence, but against her own weakness and imprudence also: that the object is to put the property out of her reach, and secure it from the effect of the influence and solicitation to which she may during coverture be exposed : that, however large the interest given to the wife, she can have no power to control, contradict or overthrow the instrument under which she claims; that this is admitted, where there are express words negativing all other power, so that the validity and binding *218 operation- of the restriction is admitted; that as the wife cannot violate or annul the provisions of the instrument, she cannot, by deed, annihilate that continuing power over the disposition of the estate, which is implied in the power to appoint by will. That power, though executed, is liable to be revoked even in her last moments, when she may, by the act of her will, render invalid any previous instrument obtained from her through the undue influence of the husband. In the particular case, for instance, of Williamson v. Beckham, the- father of the feme, knowing probably that the intended husband was embarrassed, and desirous to secure his daughter from want, insists on a settlement. It is made in terms which give her the power of appointment by will; which secures to her through life the locus pcenitentice, the power of revocation. If the deed made by herself and her husband, in one month after marriage, be valid, then she has defeated the settlement; she has taken away from herself that power to change her mind to the last moment, which it was designed she should have; she has conveyed away the estate, and given up to her husband all that had been secured to her, and has thus debarred herself of the power of appointing-it to her children, and has cut herself off from the support provided for her in the event of her surviving him. Suppose she were now to execute the power in favour of her children, and should then die ? If such execution would not be valid, then it is plain that by the deed she has defeated the settlement; and on the other hand, if it would be valid, then it is clear the deed is inoperative.*
It was argued, however, with great force, by mr. Stanard, that the intention of the clause giving power to dispose by will, is to extend the powers of the feme *219 covert, not to limit them; that she had, without such , ... . clause, a power to convey by deed with privy examination, and that this is not taken away. But it must be observed, that the power of the wife over her trust esLate, is not equivalent to her power over a legal title vested in her. For, admit our privy examination to have the sweeping and conclusive effect of a fine, and to pass or bar equitable as well as legal rights, yet even a fine is not always conclusive in equity, upon the equitable interests of the wife; 11 Ves. 232. If the transaction is not fair, it will be set aside; for, the legal title being outstanding in a trustee, the whole matter is completely within the jurisdiction and power of the court of equity. Even the conusee of the fine, or the bargainee (with us) under a deed with privy examination, cannot resist the legal title of the trustee: they must enforce their rights in equity. Suppose, then, mrs. BecJcham should hereafter make an appointment by will to the children of the marriage : to whom shall the trustee convey ? To the bargainee under the deed, which at most conveys but an equity, and which sets at nought the provision securing to her the exercise of free will, and a power of revocation at all times during life? or shall the conveyance be made to the appointees under the power regularly executed according to the provisions of the settlement ? The latter assuredly: for the deed of settlement being made to secure certain rights to the feme covert, and among others the right of changing her-will, the deed of bargain and sale, which curtails her of this right, cannot be countenanced in equity. The trustee stood bound to hold to the use of those whom she might appoint by will; it would be a breach of trust in him to convey to any other, and a violation of the settlement by the court to compel him to do so. It was on this principle that in Parkes v. White, 11 Ves. 209. lord Eldon set aside the fine of the feme “as to the remainder to such persons and uses as the wife should appoint by will;” for he said, that the wife be *220 Jng authorized to appoint by will, shewed an intention “ grantor, that the trustee should so hold the estate as to enable the wife to appoint at any time during life, Nothing can be more apposite to the question before us than this opinion. It is true, that diminution of power cannot be inferred from an extension of power. But its extension in one way, may well operate a diminution in another. The power to appoint by will, is a negative of the legal ability to appoint by deed, because the exercise of the legal power annihilates the granted power; and the grantee thus, in effect, annuls the deed under which she claims. By the settlement, a continued control over the property during life is secured to her; by her conveyance, this power is frustrated and defeated forever : by the settlement, as lord Eldon says, “ the trustee is so to hoLd the estate as to enable the wife to appoint at any time during her life;''1 and by her conveyance, he ceases to hold for that purpose, and is compelled to convey the estate to the grantee in a conveyance directly in conflict with the provisions of the instrument under which he acts.
With these general views of a much debated question, I am still of the opinion expressed by the court in Williamson v. Beckham. In the present case, however, so far as respects the life estate of mrs. Lee, I am of opinion, that the mortgage to the bank of the U. States in which she joined, passed her title. Her interest is but a life estate ; and as the disposition of it is uncontrolled by any express or implied restriction, I think it was at her absolute disposal. In this respect, the case very much resembles that of Parkes v. White. I should, therefore, be of opinion, that the decree should be reversed, and the cause remanded for further proceedings upon the principle of the validity of the mortgage, so far as respects the life estate of mrs. Lee. But my brethren are of opinion that the decree should be affirmed.
Decree affirmed.

 The judge, in this sentence, refers to the deed made by the feme covert in favour of her husband in the case of Williamson v. Beckham.