Lee, J.
Where a devise or testamentary gift is made to several, with words of survivorship annexed, or where the gift is to such of a class as shall survive, it becomes important to ascertain to what period the words of survivorship are intended to refer. Where no previous particular estate is interposed, but the gift is to take effect in possession immediately on the death of the testator, the established rule of construction is, to refer the words of survivorship to that event, and to regard them as designed to provide against the contingency of the death of the objects of the testator’s bounty in his life time. Where, however, the gift is not to take effect in possession immediately upon the death of the testator, but a previous estate for life, or other particular estate, is interposed, *69 there is much greater difficulty in determining the construction by which the period of the survivorship is to be ascertained. The cases on the subject are numerous, and would seem not to be by any means all accordant. Indeed there would seem to have been a marked change in the current of the English decisions bearing upon it. In the earlier cases, almost without an exception, it will be found that the words of survivorship have been held to refer to the period of the testator’s death. Wilson, v. Bayly, 3 Bro. Par. Cas. 195; Stringer v. Phillips, 1 Eq. Cas. Ab. 293; Rose v. Hill, 3 Burr. R. 1881; Roebuck v. Dean, 2 Ves. jun. R. 265; Perry v. Woods, 3 Ves. R. 204; Maberly v. Strode, 3 Ves. R. 450; Brown v. Bigg, 7 Ves. R. 279; Garland v. Thomas, 4 Bos. & Pul. 82; Edwards v. Symonds, 6 Taunt. R. 213; Long's lessee v. Prigg, 8 Barn. & Cress. 231, 15 Eng. C. L. R. 206. On the other hand, numerous cases are to be found, affirming a different rule, and referring the words of survivorship to the death of the tenant for life, or other prior particular estate. Such, are the cases of Brograve v. Winder, 2 Ves. jun. R. 634; Newton v. Ayscough, 19 Ves. R. 534; Hoghton v. Whitgreave, 1 Jac. & Walk. 146 ; Daniell v. Daniell, 6 Ves. R. 297 ; Wordsworth v. Wood, 2 Beav. R. 25, 17 Eng. Ch. R. 26; Cripps v. Walcott, 4 Madd. R. 11; Pope v. Whitcombe, 3 Russ. R. 124, 3 Cond. Eng. Ch. R. 323; Gibbs v. Tait, 8 Sim. R. 132, 11 Cond. Eng. Ch. R. 359; Browne v. Lord Kenyon, 3 Madd. R. 410; Neathway v. Reed, 17 Eng. Law & Eq. R. 150. It is true, Judge Parker, in delivering his opinion in Hansford v. Elliott, 9 Leigh 79, seems to think that most of the cases may be explained upon the particular circumstances attending them, and that they are not irreconcilable with those which refer the period of survivorship to the death of the testator; and that at all events the weight of authority is in favor of that doctrine. I confess my *70 examination of the English cases had brought my mind to a different conclusion. It seemed to me that of the two classes of cases were directly con-dieting and irreconcilable; and that whatever might be the safest and soundest contraction, and that best adapted to promote the intention of the testator, the preponderance of the English authorities was in favor of the rule making the words of survivorship relate to the expiration of the previous particular estate, being the period of the distribution of the subject of the gift, rather than to the death of the testator.
It may admit of very grave question whether this is a subject upon which anything like a fixed rule of construction can be established. The question, and the only legitimate enquiry, is, what is the intention of the testator. As was said by Sir William Grant, in Newton v. Ayscough, 19 Ves. R. 534, the period to which the survivorship relates depends not upon any technical words, but upon the apparent intention of the testator collected from the particular disposition or the general context of the will. Lord Alvanley expressed the same opinion in effect in Russel v. Long, 4 Ves. R. 551. And in Cripps v. Walcott, 4 Madd. R. 11, Sir J. Leach, speaking of the construction which refers the survivorship to the period of division, evidently considers it as only applying in the absence of a manifestation of a special intent. Where that appears it must prevail and control the construction. What may be the true intention of the testator in any case is best deduced from the terms and provisions of the will when viewed in the light of the surrounding circumstances which attended the execution. To seek to determine it by applying arbitrary rules and technical principles, with which testators, and those who write their wills, are, in a very large majority of cases, ut- ' terly unacquainted, would be most unprofitable and hazardous.
*71 This subject came under review in this court in the case of Hansford v. Elliott, above cited; and whatever may be the rule of the English courts, this court seem to have adopted that which refers the words of survivorship to the death of the testator; and this is declared to be (in cases in which no special intent to the contrary is manifested,) the safest and soundest construction, that most consonant to the intention of the testator, and best supported by the authorities. The bequest in that case was of the whole of the testator’s personal estate to his wife during her widowhood, with a provision that if she again married, her interest was to be reduced to one-third, to be held for her life: and at her death the personal estate was to be equally divided among the surviving children of the testator thereafter named, &c. The court (four judges concurring) held that the word “surviving” referred to the death of the testator, and not to that of the tenant for life : and so the children of the testator who survived him, but died before the death of the tenant for life, took vested estates in remainder.
It is true that Judge Parker, in delivering his opinion, (in which three of the other judges concurred,) says that if the rule were otherwise than as he had maintained it to be, he should still be of opinion that the words of the will in that case sufficiently showed a special intent that the interest should vest at the death of the testator. But he enters fully into the general question, and upon a review of the authorities, concludes that the true rule is that of the earlier English cases which have been hereinbefore referred to.
This case must therefore be regarded as authority in cases in which no special intent appears in the will, and as ruling such as are not essentially distinguishable from it.
The counsel for the appellant insists that this case is so distinguishable from Hansford v. Elliott, that the *72 doctrine of that case cannot he applied to this. It is ^rue ^he terms of the will in that case are in some redifferent from those of the will under considera^on ’ I kave ^een unable to perceive how the dif^erence ^ s0 essential as to withdraw this case from the influence of the reasoning and the conclusions which were adopted in that. In Hansford v. Elliott, the bequest was of personal property: here, it is a gift of real and personal property; but it is first to be converted into money by sale, and in that form divided. In that, the limitation was to individuals by name: here, it is to the surviving children as a class. But from the case of Long's lessee v. Prigg, 8 Barn & Cress. 231, which was a case of a devise to surviving children as a class, we see that no difference in the result will flow from this distinction; the same doctrine being held applicable to devises to individuals nominatim and as a class. In Hansford v. Elliott the property is given for the comfort and support of the wife and children, and this is supposed to indicate an intention to vest the estate in the children to be supported. The inference is of little cogency at best; but a similar feature may be traced in the present case; for from the provision in favor of his son Robert in the event of the death of his wife before he should be old enough to be bound as an apprentice, the testator would seem to intend that the mother should make provision out of the means left to her, for the wants of such of the children as needed her assistance. That no disposition is made by the will in this case of the whole or any part of the property given to the wife during her widowhood, in case of her second marriage, is a circumstance of little weight as tending to evince the intention of the testator. He may have used the expression “ during her widowhood” in the sense of “ during her life,” not anticipating the contingency of a second marriage; and this would seem not improba *73 ble from the fact that the provision for Robert which immediately follows in the same sentence of the will, is only in the event of the wife’s death before he tained the age of sixteen years, no allusion being made to the possibility of her second marriage; whereas there would seem to have been exactly the same reason for such a provision in the latter event as in the former. Such, I incline to think, is the meaning which should be given to the words “during her widowhood;” but if they are to be construed according to their literal import, so that the estate given to the widow would be held to be determined upon a second marriage, I think no such embarrassment would result as the counsel seems to suppose. The remainder being vested would not be void, but the effect would be to hasten the period of distribution by substituting that of the second marriage of the wife for that of her decease.
The argument drawn from the consideration that in Hansford v. Elliott, if none of the children had survived the tenant for life, a total intestacy would have been the consequence, (a result which the testator could not be supposed to have intended,) while in this case the construction contended for by the counsel would not be attended with such a result, can have little force or effect to withdraw this case from the influence of the reasoning in the former. It is a sufficient answer to it to remark, that such an intestacy would not be the result of either construction contended for in this case. Indeed one of the reasons which suggests itself for the preference of the rule which refers words of survivorship to the death of the testator to that which looks to the death of the tenant for life, is, that in a large majority of cases, the former will be less likely than the latter to occasion a total intestacy, and thus bring about a state of things which the testator manifestly did not intend to exist.
*74 It is true that in the cases of Brograve v. Winder, Hoghton v. Whitgreave, and Newton v. Ayscough, as in present case, the property was directed to he sold and the proceeds divided at the death of the tenant for ^e’ I can perceive no particular significancy in this circumstance as bearing upon the question who were the objects of the testator’s bounty. All that is fairly to be deduced from it is, that the testator chose that the property should be kept together, and his wife continue to use it in the same condition in which he should leave it, and in which she with him had been previously accustomed to enjoy it. But whatever weight might be attached to it where the property consisted of consols or other stocks, as in the cases of Newton v. Ayscough and Neathway v. Reed, I think it can have little force in a case like the present, where the property consisted of land and negroes and other articles of- personal property. That a testator, after giving such property to his wife during her life, should direct it to be sold at her death, and the proceeds divided among his surviving children, does not, in my judgment, furnish any indication that his meaning was to restrict his bounty to those of them who should chance to be then still living, to the disinherison of the families of such of them as should have died before the death of the tenant for life.
It will be seen, in a learned work on the subject of wills, (2 Jarm. on Wills 647,) the author regards such a provision in a will as furnishing no real distinction between it and the cases in which the words of survivorship had been referred to the death of the testator. And he attributes to Sir William Grant probable disapprobation both of the reasoning which led to the adoption of the rule in those cases, and of this distinction (without a difference) which had been engrafted upon it by Lord Loughborough. The case to which he refers as evincing the view probably entertained by Sir William Grant, is Daniell v. Daniell, 6 Ves. R. 297.
*75 I think, therefore, the circumstances relied on fail to show any special intent on the part of the testator in this case in the use of the words “ surviving dren,” to refer them to the death of the tenant for life ; and that the case cannot be distinguished, in any essential particular, from Hansford v. Elliott. I think, too, the rule prescribed in that case (so far as any rule can be applied to a subject of this character,) is perhaps the soundest and safest rule, and best adapted, in a large majority of cases, to promote the intention of testators. But whatever might be my opinion as to this, I think it should be adhered to as the settled doctrine of this court, notwithstanding the different result of the recent English cases.
In the case of Hansford v. Elliott, President Tucker dissented from the opinion of the other judges upon this question. But it will be observed upon examining the opinion delivered by him, that had that case contained a particular feature which is found to exist in this, he would have concurred in the judgment of the court. He said that if it had appeared the testator had lost a child before the date of his will, the natural construction of the word “ surviving” would be to refer it to that event. In this case, it does appear that the testator had lost a daughter, Mrs. Cowles, before the making of his will, and that circumstance was doubtless in his mind at that time, because he makes a bequest of one hundred dollars to her son. And according to the opinion of Judge Tucker, the expression “ surviving children” should be construed to mean those who were living at the date of the will; who would thus take a vested interest at the death of the testator. In the case of Neathway v. Reed, Lord Justice Knight Bruce seems disposed to give the same construction to the words of survivorship which is given by Judge Tucker in the case supposed by him, and which is the actual case here. It is unnecessary, *76 however, to consider the case in this view any farther, because it does not appear that any change took place in the condition of the testator’s family between the date of his will and his death, so that the same persons would be designated by the words “ surviving chil- . dren,” whether they be referred to the one period or to the other.
In conclusion, I would remark that the particular bequest under consideration cannot be read in the sense given to it by the construction contended for by the appellant’s counsel, without a plain departure from the literal import of the terms employed. Those terms are “ between all my surviving children, or their heirs.” Heirs of whom? Certainly not of any child or children that might be living at the death of the tenant for life. Nemo est díceres viventis. The appellant’s counsel says the terms used are not to be understood according to their literal import, and that the true meaning is that the 'property is to be divided between such of the children as should be living at the death of the tenant for life and the heirs or descendants of such as should have died; the latter to take per stirpes, unless all the testator’s children should then be dead; in which event, the grand children would take per capita. But this construction would embrace exactly the same persons as participants in the testator’s bounty as if he had said, “ to my children and their heirs,” entirely omitting the word “surviving,” and changing “ or” into “ and.” Tet some effect must be given to this word “ surviving,” because some meaning must if possible be assigned to every word in the will. Turner, lord justice, in Neathway v. Reed. I take it, that where some meaning can be given to a word, it must receive it, unless it will occasion some incurable repugnance between different parts of the will, or violate the plain intention of the testator. And although it may be admissible to replace the disjunctive with *77 the conjunctive, if necessary to effectuate the testator’s intent, such necessity must first be clearly shown to exist. According to the appellant’s reading of will, the word “ surviving” does not serve to designate the persons who are to take in remainder, which is its natural and proper function; but if it have any effect, it is to convert what would otherwise be a vested in-
terest into a contingent remainder, against the known preference of the law to construe an estate to be the former rather than the latter. On the other hand, if we will suppose that the testator, in using the words “ my surviving children, or their heirs,” could not have had in mind only those of his children who should be living at the death of the tenant for life, but must have intended to provide for the children or descendants of such of them as, though then surviving at the date of the will, or who might be surviving at his decease, might yet die in the life time of the tenant for life, all difficulty is avoided, and the natural and literal import of all the words used is preserved: and the effect is to confer a vested interest upon all the children who were living at the death of the testator.
I am of opinion to affirm the decree.
Allen, Moncure and Samuels, Js. concurred in the opinion of Lee, J.
Daniel, J. dissented.
Decree appirmeb.