94  383
96  781

## Richmond.

CHEATHAM *v.* GOWER & OTHERS.

March 18, 1897.

WILLS—*Construction of—Surviving children—Case at bar.*—A testatrix, seventy years of age, a few hours before her death, made and published her will as follows : " I give to my nephew, T. M. Cheatham, during his life my mansion house, * * * and at his death to his surviving children.
" My money and bonds I wish to be equally divided between L. L. Lester's and T. M. Cheatham's children.
" All the balance of my estate, both real and personal, I wish to be equally divided between T. M. Cheatham's and L. L. Lester's children * * * ."
*Held :*
> The remainder after the termination of the life estate created by the first clause passed to the children of T. M. Cheatham living at his death, whether in being at the testator's death or not ; but the estates given by the other two clauses of the will were to the children of Lester and Cheatham living at the death of the testatrix.

Appeal from a decree of the Circuit Court of Chesterfield county, pronounced February 15, 1895, in a suit in chancery, wherein the appellant, Mary J. Cheatham, was the complainant, and the appellees and others were the defendants.

*Reversed.*

This suit was instituted by Mary J. Cheatham, the widow of T. M. Cheatham, and also the owner of the share of one of his surviving children, for the purpose of having the will of Ann P. Hatcher construed, to recover the commuted value of her dower interest in a part of the land, and to have partition of the residue of the ·land in which she had an interest as grantee of her son. The bill charged that partition could

not be made in kind, and prayed for a sale for that purpose. The other facts appear in the opinion of the court.

*P. V. Cogbill* and *J. M. Gregory*, for the appellants.

*George Mason*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

This appeal, from a decree of the Circuit Court of Chesterfield county, involves the construction of the first clause of the will of Mrs. Ann P. Hatcher, deceased. The will is as follows:

"I, Ann P. Hatcher, now make this my last will and testament: I give to my nephew, T. M. Cheatham, during his life, my mansion house and eight hundred acres of land, including my mill, and the land known as the Burfoot tract, and at his death to his surviving children.

"My money and bonds I wish to be equally divided between L. L. Lester's and T. M. Cheatham's children.

"My railroad stock I give to T. M. Cheatham.

"All the bal. of my estate, both real and personal, I wish to be equally divided between T. M. Cheatham's and L. L. Lester's children, after paying to my niece, Bettie Ferguson, fifteen hundred dollars, and giving to Desdie F. Lester my gold watch.

her

"ANN P. (X) HATCHER.

"August 16, 1871."                    mark.

The agreed state of facts surrounding the testatrix at the time of the execution of her will are that the will was executed a short time before her death—several hours at least; that she was about 70 years old; that she was well acquainted with her nephew, T. M. Cheatham, and his wife Mary J.; that she lived with or near him, and was well acquainted with

his children; that said Cheatham and his wife were at that time young people, he being 41 years old and she 27; that they had three children then living, viz: Ophelia, Addie, and Thomas, the oldest being not more than three or four years old; and that they had previously lost two children, viz: Mattie and Fannie, who lived to the age of 15 or 16 months, the latter dying in 1865, and the former in 1867; that Mrs. Hatcher knew the names of all said children, and knew the character and habits of T. M. Cheatham; that said Cheatham was not a prosperous man, but was improvident; that the land devised by Mrs. Hatcher to her nephew T. M. Cheatham for life, and at his death to his surviving children, was at that time a good farm, having thereon comfortable buildings and a grist mill, which was being operated successfully, and was a source of a considerable income of supplies.

Subsequent to the death of the testatrix, and during the life of T. M. Cheatham, two of his children, Addie and Ophelia, died, the latter an infant, unmarried, and without issue, and the former intestate, but having married and leaving surviving her, her husband, A. G. Gower, and one infant child, Charles T. Gower; and there were born to T. M. Cheatham, after the death of the testatrix, three children, Marcellus, Aubrey D. and Josephine, all of whom, together with Thomas A. Cheatham, and the child of his deceased daughter, Addie E. Gower, survived him.

The court below held that the real estate mentioned in the first clause of Mrs. Hatcher's will passed at her death to T. M. Cheatham for his life; that the remainder therein vested, at the death of the testatrix, in the children of T. M. Cheatham, living at the death of the testatrix, viz: Addie, Ophelia, and Thomas A. Cheatham, as a vested remainder; that upon the death of Ophelia, under twenty-one years of age, unmarried and without issue, her one-third of the remainder passed and descended to her father, T. M. Cheatham, who survived her, and is liable for his debts, subject to his widow's dower;

that upon the death of Addie E. Gower (*née* Cheatham), in the life time of her father, T. M. Cheatham, her undivided one-third of the land passed and descended to her infant child, Charles T. Gower, and that the children of T. M. Cheatham, born after the death of the testatrix, though they survived him, take no interest in the land.

It is unquestionably a settled rule of construction in this State, "that after a bequest or devise of an estate for the life of the first taker, words of survivorship in a will are always to be referred to the period of the testator's death, when no special intent appears to the contrary." *Hansford* v. *Elliott*, 9 Leigh 79; *Martin's Adm'r* v. *Kirby, &c.*, 11 Gratt. 67; *Stone* v. *Lewis*, 84 Va. 474; *Sellers Ex'or* v. *Reed et als*, 88 Va. 377; *Gish* v. *Moomaw*, 89 Va. 347; *Chapman* v. *Chapman*, 90 Va., 409; *Crews* v. *Hatcher*, 91 Va. 382; and *Stanley* v. *Stanley*, 92 Va. 534.

In none of these cases, however, was the will construed similar in terms to the will we now have under consideration, and that the rule above stated was properly followed in each of those cases we raise no sort of question. We recognize as equally settled the rule that the law favors the vesting of estates at the earliest possible moment consistent with the will and sound public policy, but as was said by Morton, J., in *Olney* v. *Hull*, 21 Pick. 311: "The construction of wills and other instruments depends so much upon the peculiar expressions used in each, that not much aid can be derived from adjudged cases."

Referring to the rule that courts favor the vesting of estates as soon as the words of the instrument will admit of it, Parker, J., in the case of *Catlett* v. *Marshall*, 10 Leigh 94, said: "If the intent, however, be apparent on the face of the will, neither the technical rule respecting the early vesting of an estate, nor possible inconveniences arising from a literal adherence to such intention are to be regarded."

In the case of *Jameson* v. *Jameson*, 86 Va. 51, a testator

bequeathed a legacy in trust "for his daughter E. for life, and after her death to be equally divided amongst her surviving children and the issue of such as may be dead, such issue taking *per stirpes* and not *per capita*," etc.  During the lifetime of the daughter E., and after testator's death, one of E.'s sons died, leaving one daughter, who also died during E.'s life-time without issue, but leaving as her sole distributee her mother.  The question presented to this court was, whether the grandchild of E. took as an original legatee under the will or by substitution to the rights of her deceased parent?

In the opinion by Lacy, J., he says: "The question is one of intention, and the cardinal rule is to collect the intention of the testator from the whole will taken together, without regard to anything technical, and if the intent be lawful; that is, does not create perpetuities, or violate any rule of law, then the courts will give it effect.  Words of survivorship, in cases where these come in question, are to be referred to the period of the death of the testator, unless some contrary intent appears."  Citing among other authorities, *Hansford* v. *Elliott*, and *Stone* v. *Lewis*, *supra*.  He then says: "The bequest to my daughter for and during her life, and after her death the same to be equally divided amongst *her surviving children*, standing alone (exactly the terms of the first clause of Mrs. Hatcher's will) provides for the children of the life tenant, and for them only who survive their mother.  But the words, 'and the issue of such as may be dead, such issue taking *per stirpes* and not *per capita*,' raise a question of some difficulty, and the precise question appears to have been decided not always uniformly."  And, after discussing the question at length, citing numerous authorities, the opinion concludes: "The taking of the children is expressly postponed to the death of their mother, and the gift is then to such as survive her; but the gift is simply to the issue of such as may be dead, this being a gift to the is-

sue, not of what the father took under the will, but of what he could not take, and because he could not take it under the contingency; and the issue took not by substitution, but an original gift, to which no condition of survivorship of the life tenant is annexed by the testator.''

It is argued by counsel for appellees that much of what we have quoted from the opinion of Lacy, J., is *obiter dictum*. However this may be, it is entitled to respect and consideration. *Goodell* v. *Gibbons*, 91 Va. 611.

It was said by Chancellor Zabriskie, in *Slack & Page* v. *Bird*, 8 N. J. Eq., 242: ''Not only does the natural and plain meaning of words giving an estate at the death of the life tenant to the survivors of a class or of certain individuals named, refer to those then surviving, but it seems to me that no testator or draftsman who designed to provide that the whole remainder should go to those of the class who were living at testator's death, would ever use these words to express that intention, and would not fail to use words distinctly expressing the intention so formed; the words 'such as may survive me' or 'be living at my death' would not fail to suggest themselves.'' The language of the will discussed by Chancellor Zabriskie was not so clear as that employed in the will of Mrs. Hatcher, and yet it was held that the words of survivorship referred to the death of the life tenant; that the remaindermen living at the death of the life tenant only took under the will, and that the language of the will was sufficient to take it out of the general rule which referred words of survivorship to the death of the testator, if no special intent appear to the contrary.

In the case of *Van Tilburgh* v. *Hollinshead*, 14 N. J. Eq., 32, referred to by Chancellor Zabriskie in *Slack & P.* v. *Bird*, the devise was of lands to testator's son William for life, and at his decease to his (William's) surviving children, and the court held that only those children of William that were living at his death could take.

It is clear that the testatrix intended by the second and fourth clauses of her will that the children of T. M. Cheatham and L. L. Lester, living at her death, should take under these clauses. Why? Because the gift is to all the children of Cheatham and Lester, without any conditions attached, and words of survivorship are not used. But in the first clause different language is used. It is: "To my nephew T. M. Cheatham during his life * * * and at *his* death to *his surviving children*," showing a different intention. It would seem clear that the testatrix intended, after providing for her nephew a home for life, to provide for such of his children as might survive *him*. Those of his children who might be living at the death of the testatrix were provided for by the second and fourth clauses of the will. Had she intended that only such of the children as survived her should take under the first clause, it is reasonable to suppose, that she would have used the same words used in the second and fourth clauses, or named the children, or omitted the word "surviving" before "children." The will was executed during her last illness, and only a short while before her death, and it is hardly a reasonable supposition that she thought some of Cheatham's children might die before her death. There was no reason, therefore, why she should use the words, *"and at his death to his surviving children,"* if she intended that only those who survived her should take; but it was reasonable for her to think that of the children then in being, or those who might be born afterwards, some would probably die before their father, and to desire to provide for such as should survive him by the use of said words. To construe this language as having any other meaning would violate another well settled rule of construction, "that, if possible, some effect must be given to every word of the will." If any effect is given to the word "surviving," as used by the testatrix, there can be no question but that the proper effect is "surviving T. M. Cheatham." It does not refer to the death of the testatrix.

Her death had not been spoken of, and no reference made to it. It relates to the life tenant, T. M. Cheatham, of whom she was speaking, and to the event of his death, which she had just mentioned. The children were given no intermediate interest in the property, as was in the case of *Sellers* v. *Reed, supra.* In that case the testator willed all of his property, real and personal, to his wife until their youngest child reached seventeen years, she to board, clothe, and educate all the children until that time, when his wife was to take one-third, and the children the remaining two-thirds equally. It was held that each child took a vested interest at the death of the testator; but, in the opinion of Lewis, P., the case is distinguished from the case of *Major* v. *Major*, 32 Gratt. 819, wherein it was held that a bequest to the children of the testator's son when they arrived at the age of twenty-one years, did not vest at the death of the testator, by the fact that the children of the testator, Reed (in *Sellers* v. *Reed*), were given an intermediate interest in the property.

It was said by Lord Chancellor Cranworth, in *Neathway* v. *Reed*, 17 Eng. L. & Eq. 152: ''In my opinion, it is a very safe rule to say that when a testator gives property to a person for life, and after his death to his ''surviving children,'' the meaning of that must be, the children that survive when the interest that was given to the tenant for life becomes exhausted by the death of that party.'' In that case a testatrix, by her will, bequeathed to her sister C. N.'s surviving children £30 each, and subsequently proceeded as follows: ''I give and bequeath unto my sister C. N., the interest of my funded property for and during her natural life, and after her decease, such property to be equally divided between her surviving children.'' One of C. N.'s children who survived the testatrix, died in C. N.'s life time, and it was contended that as there were gifts of legacies of £30 each to the ''surviving children'' of C. N., not depending upon the life of C. N., therefore the testatrix had herself given a meaning to ''sur-

viving children," which was, surviving at the death of the testatrix; and that the phrase must have the same meaning in the subsequent part of the will.    But the court did not accede to this argument, and held that "surviving children" in the second gift, meant children srrviving C. N., although in the first gift it meant surviving the testatrix.

In the case at bar the word "surviving" is not used by the testatrix except in the first clause of her will, and had she intended that only the children of T. M. Cheatham who were living at her death should take under that clause, it would seem reasonable to suppose that she would have used such words as would show beyond question what she meant, and not such as she does use, which, by their common and ordinary meaning, in the sense in which they would be understood by persons of common understanding, mean that only such chilrden of T. M. Cheatham as might be living at his death were to take an interest in the property.

We are of opinion that, according to the true interpretation of the first clause of Mrs. Ann P. Hatcher's will, all of the children of T. M. Cheatham, including those born after the testatrix's death, who were living at his, T. M. Cheatham's death, and those only, took an interest in the property therein devised.

The decree of the Circuit Court of Chesterfield county must, therefore, be reversed, and the cause remanded for such further proceedings therein as may appear proper in accordance with this opinion.

KEITH, P., dissenting:

I am unable to concur in the opinion of the court in this case.    It is an established rule of construction in this State that words of survivorship in a will are to be construed as referring to the death of the testator, unless a special intent to the contrary be manifested.    I have been unable to find anything in the will in this case manifesting any special intent

upon the part of the testatrix that the words of survivorship employed by her were intended to refer to the death of her nephew, the life tenant, rather than the period of her own death, and the authorities relied upon by the court might have been cited with equal propriety to sustain the views of Judge Tucker, in his dissenting opinion, in the leading case of *Hansford et als* v. *Elliott*, 9 Leigh 79; or in opposition to the decisions of this court in the unbroken line of authorities commencing with *Hansford* v. *Elliott* and ending with *Hatcher* v. *Crews*, 91 Va. 378.

*Reversed.*