PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Stephenson, S.J.

WILLIAM C. SCHMIDT, III, ET AL.

v.  Record No. 050353      OPINION BY JUSTICE ELIZABETH B. LACY
                                         January 13, 2006
WACHOVIA BANK, NATIONAL ASSOCIATION,
 TRUSTEE, ETC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

In this appeal, we decide whether any language in the wills of William C. Schmidt (Mr. Schmidt) and Wilhemine B. Schmidt (Mrs. Schmidt) (collectively "the Testators") indicated a clear intent to delay vesting of remainder interests in the trusts created by the wills.

I.

The parties stipulated to the facts.  Mrs. Schmidt died testate on July 24, 1951, survived by Mr. Schmidt, her husband, and by her two children, Louise A. Schmidt (Louise) and William C. Schmidt, Jr. (William, Jr.).  Mr. Schmidt died testate on July 1, 1957, survived by Louise and William, Jr.

The Testators' wills each provided that the residue of their estates would be held in trust.  The wills directed the trustee to divide each of the Testators' residuary trust estates into two equal shares, one share for the benefit of Louise and the other share for the benefit of William, Jr.

Mrs. Schmidt's will provided that Mr. Schmidt was entitled to receive any portion of the income from the two trusts she created until each of the children reached age 25 years. When each child reached age 25, any income not requested by Mr. Schmidt became part of the corpus of the trust established for the benefit of that child, and the child became entitled to the income from the trust for life. Mrs. Schmidt's will further provided that Louise, when she attained age 25, was to receive $25,000 from the corpus of the trust established for her benefit. Mrs. Schmidt's will also provided that William, Jr., upon attaining age 25, was to receive one-fourth of the corpus of the trust established for his benefit and that he was to receive one-third of the remainder of the corpus at age 35.

Mr. Schmidt's will is virtually identical to Mrs. Schmidt's will, except that Mr. Schmidt's will provided for the distribution of trust income to begin when each child attained the age of 21 years. Mr. Schmidt's will also did not provide for the payment to Louise of any of the corpus of the trust created for her benefit.

Both wills provided that, upon the death of a child, the income from the trust created for that child's benefit was to be paid to the child's issue for a period of 21 years and 10 months. Both wills further provided that, if a child died

2

without issue, the income from that child's trust would be paid to the surviving child for life.

Both wills also contained the following provision: "I expressly direct that neither the principal, nor any portion thereof, nor the income, nor any portion thereof, accruing to any beneficiary under these trust provisions, shall be assignable by such beneficiaries, nor subject to any liability of any such beneficiary." In addition, both wills contained the following contingency clause:

> If any bequests or directions in this will be invalid under the laws of Virginia, or for any reason ineffectual, I direct that all of my property and estate whatever and wherever situated, which for any reason may not be sufficiently disposed of by this will, shall pass to and descend to my heirs at law, according to the statutes relating to descent and distribution in force at the date of my death.

Louise died on January 8, 1992, without issue and survived by William, Jr. and her husband, James Findley Newcomb. By her will, Louise devised her entire estate to her husband.

Newcomb died testate on May 8, 1997. He devised all of his estate, except his tangible personal property and $5,000, in equal shares, to his friends Farouk Chaabi and James O. Hobart, both of whom survived him.

James O. Hobart died testate on April 20, 2003, survived by his wife, Lee J. Edmands.  He devised his entire estate to his wife.

William, Jr. died on October 3, 2002, survived by his wife, Gladys S. Schmidt, and his two children, William C. Schmidt, III and Christina M. Schmidt (the Grandchildren).  William, Jr. also was survived by two grandchildren and two great grandchildren.

## II.

The Testators' wills did not contain provisions explicitly providing for the disposition of the trusts' remainders after the provisions for the payment of the income therefrom were satisfied.  Consequently, the trustee of the trusts, Wachovia Bank, National Association (Wachovia), filed a bill of complaint seeking the aid and direction of the court.  Specifically, Wachovia asked the court to determine the ownership interests in the remainders of the two trusts that were created for Louise's benefit.  The parties agreed that the resolution of this issue will also apply to the trusts created for William's benefit.

The trial court concluded that the contingency clauses of the wills disposed of the ownership interests in the trust remainders and that the early vesting rule applied to the phrase "my heirs at law."  Accordingly, the trial court held

4

that the remainder interests vested in Louise at the time of the Testators' deaths and therefore, Chaabi and Edmands each had a one-fourth interest in the remainders of Louise's trusts.

We awarded the Grandchildren this appeal. Chaabi and Edmands are the appellees of record.[1]

III.

The parties agree that the Testators' wills, although purporting to dispose of their entire estates, did not specifically dispose of the remainder interests in the trusts created by the wills. The contingency clauses contained in each will describe how to identify the persons entitled to the remainder interests, but do not indicate when those persons are to be identified.[2]

---

[1] On appeal, Wachovia argued in support of the trial court's ruling. Wachovia, however, received the aid and guidance that it had sought in the trial court and, therefore, does not have standing to so act. Moreover, a trustee cannot litigate the claims of one set of legatees against the others. Thus, we will dismiss Wachovia as an appellee. See Shocket v. Silberman, 209 Va. 490, 492-93, 165 S.E.2d 414, 417 (1969).

[2] The Grandchildren originally assigned error to the trial court's application of the contingency clauses and argued on brief that the contingency clauses did not apply because the intent of the Testators as shown in the wills required disposition of the remainder interests to the Grandchildren, the direct blood lineage of the Testators. At oral argument, counsel agreed that the contingency clauses in the wills applied, while still maintaining that the Testators' intent was sufficiently shown in the wills to avoid the application of the early vesting rule.

Under these circumstances the law is quite clear.

> In this jurisdiction early vesting of estates is favored, and devises and bequests are to be construed as vesting at the time of [the] testator's death, unless the intention to delay the vesting is clearly indicated by the language of the will. If it appears from the instrument that [a] testator intended that vesting be postponed to a time or upon the happening of an event subsequent to his death, effect must be given to that intent. Where the testator's intent may be determined from the language of the will, rules of construction are not to be employed.

First National Exchange Bank of Roanoke v. Seaboard Citizens National Bank of Norfolk, 200 Va. 681, 687, 107 S.E.2d 408, 413 (1959). Applying these principles to this case, the remainder interests in the trusts' corpus vested in the Testators' heirs at law under the intestacy statutes at the time of the Testators' respective deaths, "unless the intention to delay the vesting is clearly indicated by the language of the will." Id.

The Grandchildren argue that the provisions in the wills prohibiting Louise from assigning the principal of the trusts created for her benefit and the spendthrift provisions indicate a clear intent to delay vesting of the remainder interests until the death of the Testators' last surviving child, William, Jr., thereby vesting such interests in the Grandchildren. However, these provisions do not apply solely

6

to Louise.  They apply to all trust beneficiaries.[3]  Therefore, applying the grandchildren's rationale would require the deferral to extend to a point at which the remainder interest would not vest in any trust beneficiaries, including the Grandchildren.

Likewise, the fact that Louise received a fixed dollar amount of the trust's corpus in Mrs. Schmidt's will while William, Jr. received a fractional portion of the corpus is not an indication that the Testators intended to defer vesting.  Overall, there is no meaningful distinction between the Testators' treatment of the two children regarding disbursal of trust funds that supports a conclusion that the Testators intended to delay vesting because they did not want Louise to have any control of the trusts' corpus.

The Grandchildren also rely on Boyd v. Fanelli, 199 Va. 357, 99 S.E.2d 619 (1957), for the proposition that because a spendthrift trust is inconsistent with early vesting, it is sufficient evidence of an intent to delay vesting.  This is an overly broad reading of Boyd.

---

[3] Article II, paragraph 8 of Mrs. Schmidt's will and Article III, paragraph 5 of Mr. Schmidt's will state:  "I expressly direct that neither the principal, nor any portion thereof, nor the income, nor any portion thereof, accruing to any beneficiary under these trust provisions, shall be assignable by such beneficiaries, nor subject to any liability of any such beneficiary."

7

In Boyd, the testator divided the residue of her estate into five shares, each going to a specific beneficiary. See id. at 358-59, 99 S.E.2d at 620-21. For one of those beneficiaries, the testator established a spendthrift trust and provided that "at [the beneficiary's] death the principal of said fund shall pass to my next of kin, per capita." Id. at 358, 99 S.E.2d at 621. The question before the Court was whether determination of the testator's next of kin was made as of the testator's date of death or at the death of the beneficiary. Id. at 359, 99 S.E.2d at 621. The Court stated that applying the early vesting doctrine would be inconsistent with the spendthrift trust because it would allow the beneficiary, subject to the spendthrift provisions, to dispose of at least a portion of the remaining trust principal. Id. at 361, 99 S.E.2d at 622-23. But in concluding that the early vesting rule did not apply, the Court stated that the phrase directing that the principal of the fund pass to the testators' next of kin, per capita, "when considered along with other pertinent parts of the will, makes it quite clear that [the] testatrix intended to defer the vesting of what was left of the corpus of the trust fund until the life tenant's death." Id. at 362, 99 S.E.2d at 623. The Court's decision did not rest solely on the existence of a spendthrift trust.

In the instant case, no phrase such as that in <u>Boyd</u> identifies an event or time at which the remainder interests in question were to vest. The only similarity between the two cases is the existence of a spendthrift trust. Neither <u>Boyd</u> nor any other case has held that the existence of a spendthrift trust alone is sufficient to show a clear intent to delay vesting.

While the intent of the testator to defer vesting reflected in the will must be given effect, we have said that such intent must be clearly indicated by <u>language</u> contained in the will. <u>First Nat'l Exch. Bank</u>, 200 Va. at 687, 107 S.E.2d at 413. Accordingly, in the past we have imposed delayed vesting only when the will contained some actual language directing or supporting deferral. <u>See</u>, <u>e.g.</u>, <u>Maiorano v. Virginia Trust Co.</u>, 216 Va. 505, 510-11, 219 S.E.2d 884, 887-88 (1975) (trust principal to be divided, per stirpes, among the testator's issue then living "[a]t the expiration of the period of twenty-one years after the death of [William Sitterding].");  <u>First Nat'l Exch. Bank</u>, 200 Va. at 687-88, 107 S.E.2d at 413-14 ("Should either of my said nieces die before the final settlement of my estate, leaving issues, then living, such issues shall be entitled to their mother's share" means interest vested in living issue at time of mother's death, not testator's death.); <u>Cheatham v. Gower</u>, 94 Va. 383,

384, 26 S.E. 853, 853 (1897) ("I give to my nephew, T. M. Cheatham, during his life, my mansion house, . . . and at his death to his surviving children."). No such language appears in the wills at issue in this case. In the absence of such language, the doctrine of early vesting applies to these wills.

For these reasons, we will affirm the judgment of the trial court.

<u>Affirmed.</u>

SENIOR JUSTICE STEPHENSON, dissenting.

I respectfully dissent. When the wills are read as a whole, I conclude that the Testators never intended to vest Louise with the corpora of the trusts established for her benefit.

When construing a will, a court's object is to determine what the testator meant by the language used. If the meaning of the words used is plain, a court must not resort to rules of construction. In determining a testator's intent, the will as a whole should be considered, and, if possible, effect should be given to all provisions of the will in order to ascertain the testator's general plan and purpose. <u>Boyd v. Fanelli</u>, 199 Va. 357, 360, 99 S.E.2d 619, 622 (1957). Thus, while the law favors early vesting of estates, "if it appears from the language of the will that testator intended that the

vesting of an estate be deferred to a time or event subsequent to his death, that intent must be given effect."  <u>Id</u>. at 360-61, 99 S.E.2d at 622.

In the present case, the Testators were very careful to avoid the result reached by the majority.  Each will prohibited Louise from assigning the principal of the trust created for her benefit.  Each will also contained a spendthrift provision that provided that the principal would not be subject to any liability Louise might incur.  Moreover, each will did not make periodic distributions of corpus to Louise as were made to William, Jr.

Clearly, the Testators intended that Louise was to have no control over the corpora of the trusts established for her benefit.  Indeed, it defies logic and reason that the Testators would create spendthrift trusts and, at the same time, intend to vest Louise with the corpora thereof.  Such an inconsistency was recognized in <u>Boyd</u> when we said the following:

> In construing the will to determine whether it was the intent of the testatrix that the remainder vest upon her death or upon the death of the life tenant, it must be kept in mind that paragraph C sets up a spendthrift trust.

> . . . .

> This provision is inconsistent with the idea that the testator intended that the remainder vest upon her death . . . .  An anomalous situation would

11

> exist if the beneficiary under the spendthrift trust
> who now receives income for life . . . is . . . also
> the owner of a vested interest in one-third of the
> remainder of the corpus of the trust estate.

Id. at 361, 99 S.E.2d at 622-23.[*]

It is equally clear, given the Testators' "general plan and purpose," that their estates should stay in their family. This is accomplished by finding that the corpora of the trusts shall be divided between the Grandchildren determined as of the date of the death of William, Jr., the Testators' last surviving child.

For the foregoing reasons, I would hold that the Testators did not intend that the remainder interests in the trusts created for Louise's benefit should vest at the time of their deaths, but that vesting should be deferred until the death of William, Jr.  I would further hold that the remainder interests are vested in the Grandchildren.  Accordingly, I would reverse the trial court's judgment, enter final judgment in favor of the Grandchildren in whom the remainder interests would be vested, and remand for a distribution of the corpora and interest consistent with the views expressed herein.

---

[*] The majority distinguishes Boyd and the other cases it cites on their facts.  The present case, however, is governed by its own facts because no two wills are alike.  As we have said, " 'little aid can be derived in the construction of wills from adjudged cases.' "  Aldridge v. Rodgers, 183 Va. 866, 870, 33 S.E.2d 654, 656 (1945) (quoting Cole v. Cole, 79 Va. (4 Hans.) 251, 255 (1884)).