PRESENT:  Keenan, Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Lacy, S.J.


STEVEN HARBOUR, ET AL.

v.    Record No. 082023

OPINION BY
JUSTICE BARBARA MILANO KEENAN
November 5, 2009

SUNTRUST BANK, ET AL.


FROM THE CIRCUIT COURT OF PATRICK COUNTY
David V. Williams, Judge

In this appeal, we consider whether the circuit court erred in determining that certain remainder shares in a trust lapsed.

The facts in this case are not in dispute.  Mollie Boaz Johnson (the grantor) executed an inter vivos trust agreement, in which she directed that the income and the corpus of the trust be used for her benefit during her lifetime.  She further directed that if her husband, Harry B. Johnson, survived her, the trust assets be used for his benefit for his lifetime.  The trust agreement further provided, in Section 7, entitled "Disposition of Trust," the following instruction:

> C.  Payment of Estate Tax at Spouse's Death.  Upon the death of the Grantor's spouse, the Trustee shall divide the trust res, including any undistributed income and the remaining principal, into four equal shares, to be distributed as follows:
>
> One such share shall be paid and delivered to my brother, James Clayton Boaz; the second such share, shall be paid and delivered to my brother, Herbert Alan Boaz; and the third such share shall be paid and delivered to my sister, Hazel Boaz Harbour.

The fourth such share shall be delivered to the Stuart Baptist Church to be kept in a separate trust account entitled "Mollie Boaz Johnson Educational Fund", to be used for scholarships for deserving students from Patrick County in accordance with . . . My Last Will and Testament.

_If any of my brothers or sister shall fail to survive me, his or her share shall lapse and such share shall be added to the trust fund for Stuart Baptist church, previously mentioned._ (Emphasis added.)

In the margin next to the paragraph underlined above, the grantor placed her initials. She also placed her initials on the bottom of each page of Section 7 of the trust agreement.

The grantor died in 1999 and was survived by her husband and two of her siblings, Hazel Boaz Harbour (Harbour) and James Clayton Boaz (Boaz). These siblings predeceased the grantor's husband (the husband), who died in 2007. Harbour was survived by one child, Steven M. Harbour, and Boaz was survived by one child, James Aubrey Boaz.

In November 2007, SunTrust Bank, as trustee,[1] filed a complaint in the circuit court seeking aid and guidance in the interpretation of the trust agreement and in the distribution of the trust proceeds. Stuart Baptist Church (the church) and Steven Harbour and James Aubrey Boaz (collectively, the nephews) filed answers and memoranda.

---

[1] In the trust agreement, the grantor named Crestar Bank as the trustee. SunTrust Bank is the successor to Crestar Bank.

2

In its memorandum, the church contended that it was entitled to all the remaining trust assets. The church argued that under the terms of the trust agreement, the shares of all the grantor's siblings lapsed because none of the siblings was alive at the time of the husband's death.

In their memorandum, the nephews contended that because Harbour and Boaz survived the grantor, their shares did not lapse under the plain language of the trust agreement. Thus, the nephews argued, as the sole heirs of Harbour and Boaz, the nephews were entitled to shares of the remaining trust assets.

After considering the pleadings, stipulated facts, memoranda, and argument of counsel, the circuit court entered final judgment holding that "the shares of the three deceased siblings lapsed and should be added to the share to be delivered to the [church]." In a letter opinion incorporated into its final judgment order, the circuit court stated that the church's position was "more compelling [from] review [of] the instrument in its entirety."

On appeal, the nephews contend that the circuit court erred in failing to adopt the plain meaning of the language in the trust agreement, which unambiguously vested the remainder interests of Harbour and Boaz at the time of the grantor's death, rather than at the time of the husband's death. The nephews argue that the grantor's intent is clearly expressed in

the following language:  "If any of my brothers or sister shall fail to survive me, his or her share shall lapse and such share shall be added to the trust fund for [the] church."  (Emphasis added.)  Based on this language, the nephews maintain that the shares of Harbour and Boaz did not lapse because they both survived the grantor.

The nephews alternatively argue that under the rule of construction favoring the early vesting of estates, the remainder interests of Harbour and Boaz vested at the grantor's death because the trust agreement did not manifest a clear intent to postpone vesting.  According to the nephews, the trust language instructing that the remaining assets be distributed upon the husband's death related to the time of possession of the remainder interests, rather than to the event when vesting would occur.

In response, the church initially asserts a procedural bar, contending that the nephews failed to argue in the circuit court that the remainder interests of Harbour and Boaz vested at the grantor's death.  Thus, the church maintains that the nephews' argument is not properly before us on appeal.  We disagree.

The record shows that the nephews' argument to the circuit court regarding the time of vesting was not materially different from their present argument.  In their answer filed in the circuit court, the nephews stated that the remainder interests

4

of the grantor's surviving siblings vested upon the grantor's death. Although the nephews did not use the term "vest" in their trial memorandum later filed with the circuit court, the nephews alleged that the trust language unambiguously provided that if a sibling survived the grantor, then that sibling's share would not lapse but would be paid to the sibling or to the sibling's heirs upon the death of the husband. Based on this record, we hold that the requirements of Rule 5:25 were satisfied, because the circuit court was able to rule intelligently on the same substantive argument that the nephews advance here. See Nusbaum v. Berlin, 273 Va. 385, 402-03, 641 S.E.2d 494, 503 (2007); Riverside Hospital, Inc. v. Johnson, 272 Va. 518, 526, 636 S.E.2d 416, 420 (2006); Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631-32, 561 S.E.2d 663, 667 (2002).

Addressing the merits of the nephews' arguments, the church asserts that under the plain terms of the trust, the qualifying remainder shares vested at the time of the husband's death when the remaining trust assets were to be distributed. Based on this reading of the trust language, the church contends that because Harbour and Boaz died before the husband, those two siblings did not acquire vested remainder shares in the trust assets. Thus, the church contends that the general rule favoring early vesting of remainder interests is inapplicable,

5

because the grantor clearly expressed her intent to delay vesting of the remainder interests until the husband's death. We disagree with the church's arguments.

In considering the language of a trust agreement, the intent of the grantor controls. Huaman v. Aquino, 272 Va. 170, 174, 630 S.E.2d 293, 296 (2006); Clark v. Strother, 238 Va. 533, 539-40, 385 S.E.2d 578, 581 (1989). We initially ascertain the grantor's intent by reviewing the language that the grantor used in the trust instrument. Huaman, 272 Va. at 174, 630 S.E.2d at 296; McKinsey v. Cullingsworth, 175 Va. 411, 414-15, 9 S.E.2d 315, 316 (1940). If that language is clear and unambiguous, we will not resort to rules of construction, and we will not consider the grantor's apparent reasoning or motivation in choosing the particular language employed. See Schmidt v. Wachovia Bank, 271 Va. 20, 24, 624 S.E.2d 34, 37 (2006); Frazer v. Millington, 252 Va. 195, 199, 475 S.E.2d 811, 814 (1996); Boyd v. Fanelli, 199 Va. 357, 361, 99 S.E.2d 619, 622 (1957); McKinsey, 175 Va. at 414-15, 9 S.E.2d at 316. Instead, in such instances, we will apply the plain meaning of the words that the grantor used. Landmark Communications, Inc. v. Sovran Bank, 239 Va. 158, 163-64, 387 S.E.2d 484, 487 (1990); McKinsey, 175 Va. at 414-15, 9 S.E.2d at 316.

A vested remainder interest is an estate limited to a certain person and upon the occurrence of a certain event,

6

imparting a present capacity to take possession should the existing possession become vacant.  Coleman v. Coleman, 256 Va. 64, 66-67, 500 S.E.2d 507, 509 (1998); Clark, 238 Va. at 541, 385 S.E.2d at 582; Disney v. Wilson, 190 Va. 445, 455, 57 S.E.2d 144, 149 (1950); 1 Frederick D.G. Ribble, Minor on Real Property § 709, at 927 (2d ed. 1928).  Our jurisprudence recognizes a general rule of construction favoring the early vesting of remainder estates.  Schmidt, 271 Va. at 24, 624 S.E.2d at 37; Coleman, 256 Va. at 66, 500 S.E.2d at 508; First Nat'l Exchange Bank v. Seaboard Citizens Nat'l Bank, 200 Va. 681, 687, 107 S.E.2d 408, 413 (1959).  Under this early vesting rule, any remainder interests in trust assets are construed as vesting at the time of a grantor's death, unless the intent to delay vesting is clearly indicated by the trust language.  See Schmidt, 271 Va. at 24, 624 S.E.2d at 37; Coleman, 256 Va. at 66, 500 S.E.2d at 508.  However, as with other rules of construction, this rule has no application when the language of a trust or will unambiguously demonstrates the grantor's intent. See Schmidt, 271 Va. at 24, 624 S.E.2d at 37; Landmark Communications, 239 Va. at 163-64, 387 S.E.2d at 487; Clark, 238 Va. at 539-41, 385 S.E.2d at 582; Boyd, 199 Va. at 361, 99 S.E.2d at 622.

In examining the language before us, we conclude that the language employed by the grantor in Section 7(C) is unambiguous.

7

Thus, we do not apply the early vesting rule but rely solely on the words the grantor employed.[2]  See Schmidt, 271 Va. at 24, 624 S.E.2d at 37; Landmark Communications, 239 Va. at 163-64, 387 S.E.2d at 487; Clark, 238 Va. at 539-41, 385 S.E.2d at 582; Boyd, 199 Va. at 361, 99 S.E.2d at 622.

The language chosen by the grantor referenced her own death, not the death of the husband, as the event determining whether the share of a sibling would lapse.  Thus, under this language, a sibling's share would lapse only if that sibling failed to survive the grantor.

At the time of the grantor's death, both Hazel B. Harbour and James C. Boaz survived the grantor, thereby having the present capacity to take possession of their remainder interests should the husband's existing possession become vacant. Accordingly, under the trust language, those surviving siblings received a vested remainder interest in the trust assets when the grantor died.  See Coleman, 256 Va. at 66-67, 500 S.E.2d at 509; Clark, 238 Va. at 541, 385 S.E.2d at 582-83; Disney, 190 Va. at 455, 57 S.E.2d at 149.  Conversely, the share of Herbert A. Boaz, who predeceased the grantor, lapsed and became part of the trust assets included in the church's remainder interest.

---

[2] Because we do not employ the early vesting rule of construction, we do not consider the church's procedural argument that the nephews failed to preserve for appeal the argument that the early vesting rule is applicable in this case.

The church's contrary position would require us to add the phrase "and my husband" to the grantor's directive that "[i]f any of my brothers and sisters fail to survive me . . . ." A court has no authority, however, to insert words into a trust document.  See Jackson v. Fidelity & Deposit Co., 269 Va. 303, 310, 608 S.E.2d 901, 904 (2005); Gasque v. Sitterding, 208 Va. 206, 212-13, 156 S.E.2d 576, 581 (1967).  Under a plain language analysis, a grantor's intention must be determined from what the grantor actually stated, not from what may be supposed the grantor intended to say.  See MW Builders of Kansas, Inc. v. VT Properties, Inc., 246 Va. 255, 259, 435 S.E.2d 145, 147 (1993); Carter v. Carter, 202 Va. 892, 896, 121 S.E.2d 482, 485 (1961); McKinsey, 175 Va. at 414-15, 9 S.E.2d at 316.

We also observe that the trust language identifying the husband's death as the time when the remainder shares were to be distributed fixed the time when the eligible siblings and the church were to come into possession and enjoyment of their remainder interests, not the time that those remainder interests vested.  See Disney, 190 Va. at 456, 57 S.E.2d at 149.  Thus, the division of the trust res following the husband's death merely secured the possession of the remainder interests that had vested at the time of the grantor's death.  Id.

Finally, we find no merit in the church's alternative argument that the trust document read in its entirety shows that

9

the grantor intended, after providing for herself and for the husband, to benefit the church and only those siblings who survived the husband's death.[3]  This alternative argument ignores the plain language of Section 7(C).  In addition, the church has failed to identify any language in the balance of the trust document that would suggest any intent contrary to the plain terms set forth in Section 7(C).  Accordingly, we conclude that the circuit court erred in holding that the interests of Harbour and Boaz lapsed in favor of the church.

For these reasons, we will reverse the circuit court's judgment and remand the case for entry of an order distributing the remainder interests of the parties in accordance with the holding expressed in this opinion.

Reversed and remanded.

---

[3] Based on this holding, we need not consider the church's procedural argument that the nephews invited the circuit court to read and consider the trust agreement in its entirety.