UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Callins, White and Bernhard
Argued at Williamsburg, Virginia

JAMES CRAIG KELLY

MEMORANDUM OPINION* BY
JUDGE DOMINIQUE A. CALLINS
OCTOBER 21, 2025

v.      Record No. 0706-24-1

MICHAEL MOLOSSO, AS SUCCESSOR TRUSTEE
 OF THE ESTATE OF THE KELLY LIVING TRUST,
 DATED MARCH 28, 2003, AND AMENDMENTS
 THERETO, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

(Andrew G. Mauck; Mauck & Brooke, PLC, on briefs), for
appellant. Appellant submitting on briefs.

William W. Sleeth III (Shawn M. Sweaney; Gordon Rees Scully
Mansukhani, LLP, on brief), for appellee Michael Molosso, as
Successor Trustee of the Estate of the Kelly Living Trust,
Dated March 28, 2003, and Amendments Thereto.

No brief or argument for remaining appellees.

James Craig Kelly ("Craig") appeals the trial court's judgment finding that he lacked

standing to pursue a breach of fiduciary duty claim against his stepmother Vicky Kelly

("Vicky"), who was the surviving trustee of a trust established by Vicky and her husband,

Craig's biological father, James C. "Buddy" Kelly (collectively, "the Kellys").[1] Craig alleged

that Vicky breached her fiduciary duty to him and other blood relatives of Buddy by taking

certain actions that disinherited Buddy's blood relatives from trust property that they were

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Vicky died on June 18, 2024. Michael Molosso is the successor trustee and the primary
named appellee in this case.

originally entitled to under the terms of the trust. The trial court sustained Vicky's plea in bar, finding that Craig lacked standing under Code § 64.2-753(A) because, at the time he brought his claim, Vicky was still alive and the trust was revocable. On appeal, Craig argues that, upon Buddy's death, the trust became irrevocable as to Buddy's separate share of the trust property and thus the trial court erred in concluding that he lacked standing to pursue his claim. Because we agree with Craig, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

Buddy and Vicky were married on June 25, 1977. Buddy had two children prior to the marriage: Craig and Jennifer Celeste Zigmont. On March 28, 2003, Buddy and Vicky established an estate by executing the Kelly Living Trust (the "Trust"), with the Kellys serving as co-grantors and co-trustees. On December 18, 2012, the Kellys executed a first restatement of the Trust (the "First Restatement"), which provided Buddy's blood relatives with a total 70% of the remaining Trust property; Craig, specifically, was to receive a 25% portion. In his complaint, Craig asserted that virtually all the Trust property was earned and provided by Buddy.

Buddy died on March 28, 2021. Under Section 6.01 of the First Restatement, a sub-trust—the "Marital Trust"—was created upon his death, consisting of Vicky's interest in any community property of the Marital Trust and her separate Trust property as the surviving grantor.[2] Upon his death, Buddy's separate Trust property, and his share of any community

---

[2] Section 6.01 states:

> After the first of us dies, the surviving Grantor's interest in any community property of our trust and the surviving Grantor's separate trust property will be referred to as the *surviving Grantor's trust property*. The surviving Grantor's trust property will be referred to as the Marital Trust, and our Trustees shall administer the Marital Trust as provided in Article Nine.

property of the Trust, was placed in an administrative trust under Section 6.02, to be used to complete certain administrative tasks under Article Six of the First Restatement.[3] Upon completion of the administrative tasks under Article Six and the disposition of Buddy's tangible personal property under Article Seven, Buddy's remaining Trust property was then allocated to a "separate share" of the Marital Trust, pursuant to Sections 8.01 and 9.03.[4]

On July 23, 2021, Craig, through counsel, requested that Vicky, as the surviving trustee, provide him with information and an accounting on the Trust assets. On February 3, 2022, Vicky executed an affidavit of distribution, through which she transferred all of the remaining

---

> The deceased Grantor's interest in any community property of our trust and the deceased Grantor's separate trust property will be referred to as the *deceased Grantor's trust property*.

[3] Section 6.02 states, in relevant part:

> Before the distribution of the deceased Grantor's trust property as provided in this trust, the deceased Grantor's trust property will be referred to as the *administrative trust*, but may continue to be known as the KELLY LIVING TRUST during the administration period. The administrative trust will exist for the period reasonably necessary to complete the administrative tasks set forth in this Article.

Section 6.02 also states that "[u]pon a Grantor's death, our trust will become irrevocable as it pertains to the administration and distribution of the deceased Grantor's trust property."

[4] Section 8.01 states: "Our Trustee shall allocate all of the deceased Grantor's remaining trust property to the Marital Trust, and shall administer the property as provided in Article Nine." Section 9.03 states, in relevant part:

> To the extent that any of the deceased Grantor's trust property is allocated to the Marital Trust, our Trustee shall hold this property in a separate share of the Marital Trust during the surviving Grantor's lifetime. Our Trustee shall administer the separate share in accordance with all of this Article's provisions. But the surviving Grantor may not amend the terms of the separate share and the provisions of Section 9.07 pertaining to trust distributions during the incapacity of the surviving Grantor do not apply to the separate share.

income and principal in Buddy's separate share to the main share of the Marital Trust, pursuant to Section 9.03 of the First Restatement, which states, in relevant part:

> Our Trustee shall distribute as much of the principal and accumulated income of the separate share to the main share of the Marital Trust as the surviving Grantor directs in writing. This right to direct distribution from the separate share to the main account may be exercised only by the surviving Grantor.

Vicky simultaneously executed a second restatement of the Trust (the "Second Restatement"), which eliminated the 70% interest to the Trust property held by Buddy's blood relatives and gave Vicky's brother a 40% interest.

On July 8, 2022, Craig sued Vicky and several other interested parties, alleging that Vicky breached her fiduciary duty as trustee by disinheriting Buddy's blood relatives through the affidavit of distribution and Second Restatement. In his complaint, Craig requested money damages, restoration of the Trust property, removal of the trustee, and a denial of compensation to the trustee, pursuant to Code § 64.2-792(B).[5] Craig also sought a declaratory judgment from the trial court as to the validity of the Second Restatement.

In response, Vicky filed a demurrer and plea in bar asserting that, under Code § 64.2-753(A), Craig lacked standing to bring his claim. Vicky argued that, under Articles Six, Seven, Eight, and Nine of the First Restatement, the Trust was revocable at the time Vicky executed the Second Restatement. Thus, Vicky further argued, any irrevocability as to Buddy's Trust property pertained only to the execution of administrative tasks following his death. Thereafter, any of Buddy's remaining Trust property was properly allocated to his separate share

---

[5] Code § 64.2-792(B) provides that a breach of trust may be remedied by "[c]ompel[ling] the trustee to redress a breach of trust by paying money, restoring property, or other means," "[r]emov[ing] the trustee as provided in §64.2-759," or "[r]educ[ing] or deny[ing] compensation to the trustee."

of the Marital Trust over which Vicky held broad authority to dispose of according to her wishes under Article Nine.

After a hearing, the trial court sustained Vicky's plea in bar, concluding that Craig lacked standing under Code § 64.2-753(A) because Vicky was still alive and the First Restatement was revocable when Vicky executed the Second Restatement. The trial court found that, under the terms of the First Restatement, any irrevocability as to Buddy's Trust property pertained only to the administrative trust, which ceased to exist at the end of the administrative period under Section 6.02, after which Buddy's remaining Trust property was to be allocated to his separate share of the Marital Trust under Sections 8.01 and 9.03. Although Section 9.03 states that Vicky "may not amend the terms of the separate share," the trial court observed that the purpose of the separate share under Section 9.03 was to avoid potential negative tax consequences.[6] The trial court further observed that Section 9.03 permitted Vicky to distribute as much of the income and principal of the separate share to the main share of the Marital Trust as she desired and Section 9.02 gave her the "absolute right" to amend and restate the terms of the Marital Trust.[7] Based on

---

[6] Section 9.03 states, in relevant part:

> The purpose of the separate share is to keep the deceased Grantor's trust property and its accumulated income separate from the main share during the lifetime of the surviving Grantor, in order to qualify the separate share as a designated beneficiary under qualified retirement plans and to avoid the possible disqualification of the federal estate tax marital deduction under Internal Revenue Code Section 2056.

[7] Section 9.02 states:

> The surviving Grantor also has the absolute right to amend the Marital Trust's terms by restating them in full. The restated Marital Trust must be in writing and signed by the surviving Grantor and the Trustee of the restated Marital Trust.
>
> The right to amend by restatement may be exercised only by the surviving Grantor.

these provisions, the trial court concluded that the First Restatement was a fully revocable trust. Accordingly, the trial court concluded that Craig lacked standing under Code § 64.2-753(A) to contest the validity of the Second Restatement because he did not have an immediate, pecuniary, and substantial interest in the Trust property until the Second Restatement became irrevocable after Vicky's death.

On April 1, 2024, the trial court entered a final order sustaining Vicky's plea in bar and dismissing Craig's complaint without prejudice, permitting him to refile his complaint after Vicky's death. On April 29, 2024, Craig appealed to this Court. Following Vicky's death on June 18, 2024, Michael Molosso ("Molosso") was named as the successor trustee of the Trust, and this Court granted Molosso's motion to be substituted as the appellee in Vicky's stead.

ANALYSIS

Evaluating the trial court's sustaining of Vicky's plea in bar for lack of standing under Code § 64.2-753(A) requires the interpretation of the provisions of a trust, which presents "a pure question of law, subject to . . . de novo [review] on appeal." *Keener v. Keener*, 278 Va. 435, 442 (2009). "In considering the language of a trust agreement, the intent of the grantor controls." *Kosmann v. Brown*, 81 Va. App. 322, 340 (2024) (quoting *Harbour v. SunTrust Bank*, 278 Va. 514, 519 (2009)). "We initially ascertain the grantor's intent by reviewing the language that the grantor used in the trust instrument." *Id.* (quoting *Harbour*, 278 Va. at 519). "If that language is clear and unambiguous, we will not resort to rules of construction," but instead "apply the plain meaning of the words that the grantor used." *Id.* (quoting *Harbour*, 278 Va. at 519). "[I]n ascertaining th[e] [grantor's] intention, we must examine the document as a whole and give effect, so far as possible, to all its parts." *Id.* (second and third alterations in original) (quoting *Frazer v. Millington*, 252 Va. 195, 199 (1996)). Ultimately, "an appellate court is not 'bound by the [trial] court's interpretation of the [trust] provision at issue; rather, we have equal opportunity to consider the words of the

[trust] within the four corners of the instrument itself.'" *Id.* at 340-41 (quoting *Eure v. Norfolk Shipbuilding & Drydock Corp., Inc.*, 263 Va. 624, 631 (2002)).

Code § 64.2-753(A) provides that:

> A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of:
>
> 1. Two years after the settlor's death; or
>
> 2. Six months after the trustee sent the person a copy of the trust instrument and a notice informing the person of the trust's existence, of the trustee's name and address, and of the time allowed for commencing a proceeding.

Code § 64.2-753(A) effectively functions as a statute of limitations, specifying when a person may bring suit to contest a trust's validity and when such suit is untimely. The comment to Section 604 of the Uniform Trust Code ("UTC"), which is the UTC analogue to Code § 64.2-753, explains that "[t]his section provides finality to the question of when a contest of a revocable trust may be brought" and "specifies a time limit on when a contest can be brought." Unif. Tr. Code § 604 cmt. (Unif. L. Comm'n 2023). Importantly, the UTC illuminates the implicit premise behind Code § 64.2-753(A) that "a trust that was revocable at the settlor's death" subsequently becomes irrevocable due to the settlor's death, thus giving a person standing to contest the trust's validity. *See* Unif. Tr. Code § 604 cmt. ("This section applies only to a revocable trust that becomes irrevocable by reason of the settlor's death."). In other words, under Code § 64.2-753(A), a person has standing to contest the validity of a previously revocable trust only if the trust has become irrevocable due to the settlor's death.

Craig argues that, under the terms of the First Restatement, the Trust became irrevocable as to Buddy's separate share of the Trust property following Buddy's death, and thus Craig had standing under Code § 64.2-753(A) to bring his breach-of-fiduciary-duty claim against Vicky.

We agree.  The dispositive provision is contained in Section 9.03 of the First Restatement, which plainly states:

> To the extent that any of the deceased Grantor's trust property is allocated to the Marital Trust, our Trustee shall hold this property in a separate share of the Marital Trust during the surviving Grantor's lifetime.  Our Trustee shall administer the separate share in accordance with all of this Article's provisions. *But the surviving Grantor may not amend the terms of the separate share.*

(Emphasis added).  Section 9.03's mandate that "the surviving Grantor may not amend the terms of the separate share" necessarily entails that Buddy's separate share—which was a sub-trust of the Marital Trust and a sub-sub-trust of the entire Trust—became irrevocable after the administration period under Article Six and the disposition of Buddy's tangible personal property under Article Seven.  Once Buddy's Trust property was transferred into the separate share of the Marital Trust under Articles Eight and Nine, that separate share became irrevocable, pursuant to Section 9.03.  Accordingly, Craig had standing under Code § 64.2-753(A) at this point—and did at the time he initially brought it—to pursue his claim against Vicky.

It is true that, under Section 9.03 of the First Restatement, Vicky had the broad authority to "distribute as much of the principal and accumulated income of the separate share to the main share of the Marital Trust" as she desired, and Section 9.02 gave Vicky "the absolute right to amend the Marital Trust's terms."  There is nothing inherent in these powers, however, that fundamentally alters or supersedes the language in Section 9.03 plainly indicating that Buddy's separate share was irrevocable.  This point is further bolstered when considering the language of Section 6.02, which states that the *entire* trust becomes irrevocable during the period of distribution of the deceased Grantor's separate trust property, and Section 9.03, which expressly provides that the surviving Grantor *may not* amend the terms of the deceased Grantor's separate share.  By the same token, the language in Section 9.03 stating that the purpose of the separate

share was for tax-deduction purposes ultimately has no legal bearing or effect on the irrevocable nature of Buddy's separate share.

Finally, Molosso contends that the trial court would still have reached the right result in concluding that Craig lacked standing because Craig sustained no damages, as Vicky was technically permitted under Section 9.03 to completely liquidate the income and principal of the separate share. This argument, however, requires this Court to presume that Vicky owed a fiduciary duty as trustee, that she breached that duty, and that damages resulted—issues for the trial court to resolve on remand, as they are not before us in this appeal.

CONCLUSION

For the foregoing reasons, we hold that the trial court erred in finding that Craig lacked standing under Code § 64.2-753(A) to pursue his breach of fiduciary duty claim against Vicky. Accordingly, the trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*